### UNITED STATES v. ROANOKE MOTOR CO., Inc., et al.

District Court, W. D. Virginia, at Roanoke.
April 17, 1934.

T. X. Parsons, Asst. U. S. Atty., of Roanoke, Va.

Apperson, Rush & Gentry, of Roanoke, Va., for defendant United States Fidelity & Guaranty Co.

PAUL, District Judge.

The facts agreed on in this case are in substance as follows: In August, 1930, the Commissioner of Internal Revenue made an additional assessment against the Roanoke Motor Company, Inc., for income taxes for the years 1926, 1927, and 1928, aggregating $3,378.53, of which the taxpayer was duly notified. On September 29, 1930, the defendant made application under the provisions of section 272 (j) of the Revenue Act of 1928 (26 USCA § 2272 (j), for an extension of time within which to pay the tax. An extension was granted giving the taxpayer until September 25, 1931, to pay the tax, and, a bond being required in the amount of $3,715, the taxpayer executed such bond with the United States Fidelity & Guaranty Company as surety thereon. The condition of the bond which was executed November 7, 1930, was that the taxpayer should pay the tax, plus penalty and interest, on or before September 25, 1931.

The tax was not paid in full on or before September 25, 1931, and on December 14, 1931, the collector of Internal revenue caused to be filed in the clerk's office of the Hustings court of the city of Roanoke a memorandum or notice of lien on the property of the taxpayer, as provided by section 613 (a) of the Act of May 29, 1928, 45 Stat. 875 (26 USCA § 115); and on December 17, 1931, a like notice of said tax lien was filed in the clerk's office of the United States District Court at Roanoke.

On January 2, 1932, Withers-Johnson Chevrolet Corporation notified the collector of internal revenue that it expected to purchase in bulk certain tangible property of the Roanoke Motor Company, and that the purchase would be effected by the payment to the latter concern on January 14, 1932, of the sum of $9,098.29 in cash. The notice of the impending sale was presumably that which, under the provisions of the Virginia Bulk Sales Act (Code 1930, § 5187), is given to the creditors of a vendor in bulk.

At this time the United States Fidelity & Guaranty Company had made no effort to fulfill its obligation as surety on the bond which provided for payment of the taxes not later than September 25, 1931, and on January 6, 1932, the collector of internal revenue addressed a letter to that company requesting it to pay the tax under its obligation as surety on the bond and informing it of the impending sale of the property of the Roanoke Motor Company, the principal in the bond.

The sale by the taxpayer was consummated on January 14, 1932, and on the same date the collector caused the liens recorded in the offices of the clerk of the hustings court and the clerk of this court, respectively, to be released; this release stating that "this lien is being released as a good and sufficient surety bond, acceptable to the Government, has been executed by the taxpayer."

The "good and sufficient surety bond" referred to is apparently the one executed in November, 1930, when the extension of time was granted. It is difficult to see any reason why the collector should file notice of a lien months after this bond had been given and should then, about a month after recording the lien, release it because the bond had been given. The only explanation is that the lien was filed in the course of office routine, overlooking the fact that a bond had been given, and that, when attention was called to the existence of the bond and the security afforded by it, the lien was released in order not to embarrass the proposed sale.

The taxes not being paid, in September, 1932, formal demand was made upon the surety on the bond that it pay the amount of these taxes. Payment was not made, and the government has brought suit to recover of the taxpayer, Roanoke Motor Company, Inc., and the surety on the bond, United States Fidelity & Guaranty Company, the amount still due, which is alleged to be the sum of $2,186.23, subject to a credit of $250 as of March 18, 1932, with interest at 6 per cent. per annum from September 25, 1930, to September 25, 1932, and interest at 1 per cent. per month since the latter date.

The United States Fidelity & Guaranty Company pleads that it is released from its liability on the bond because of the fact that the collector released the lien upon the property of the Roanoke Motor Company. It invokes the principle of law that, where one has become surety for the payment of a debt, and the creditor, without consent of the surety, releases a lien which he has upon the property of the debtor, and to the benefit of which the surety would have been subrogated had the surety paid the debt, the surety is thereby released pro tanto from his obligation.

As part of this contention, counsel for the surety company cite numerous cases to the effect that where one, as surety on a bond or in other capacity, has paid taxes assessed against another, he is subrogated to the rights

and priorities of the taxing power for the recovery from the principal debtor of the amount so paid.

It may be conceded that a surety will in general be subrogated to all legal rights and remedies available to the creditor to obtain payment of the debt, and that, by the weight of authority, this doctrine extends to the point where a surety for a debt owing the United States is subrogated to the sovereign right to prior payment from the property of the principal debtor. 60 C. J. pp. 759–763.

But approval of this general principle does not necessarily compel agreement with the second portion of defendant's contention; namely, that the surety is released from its obligation on the bond because the collector released the notice of lien.

There is a distinction between the lien for taxes and the notice of this lien filed by the collector. The lien is not created by the filing of the notice, but exists independently of the notice. It is expressly declared by the statute (26 USCA § 115, subsec. (a) that "the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." The notice is merely notice of a lien already existing, and may or may not be filed, but until it is filed the lien is not valid as against purchasers, mortgagees, or judgment creditors.

Whether the collector having filed notice of lien and thereafter having filed such an instrument as is shown in this case thereby merely cancels or annuls the notice or releases the lien itself is open to some question. The statute rather adds to the uncertainty in this respect. It will be noted from the language quoted above that the lien arising when the assessment is received by the collector "shall continue until the liability for such amount is satisfied. * * *" But it is further provided in the same section that a certificate of release of the lien may be made by the collector under certain conditions, one of which is, "if there is furnished to the collector and accepted by him a bond that is conditioned upon the payment of the amount assessed. * * *" See 26 USCA § 115, subsec. c(2). Unless the giving and acceptance of the bond "satisfied" liability for the tax debt (as provided in subsection (a), it would seem that what the collector is empowered to release is only the notice of lien, not the lien itself, which is expressly directed to continue until the amount of the tax debt is "satisfied." Ordinarily, a debt is not deemed satisfied until paid, and the execution of a bond for its payment would not be a satisfaction.

But the language of the statute indicates that it was intended that the lien itself was to be released on acceptance of a bond; and this is borne out by the further provision (subsection (d) that "a certificate of release * * * shall be held conclusive that the lien upon the property * * * is extinguished." That it is the lien itself which the collector released is apparently the view of the defendant here, for its plea asserts that the United States had a lien upon the property of the Roanoke Motor Company, and "with knowledge of said lien * * * and relying upon the security thereof, the defendant, United States Fidelity & Guaranty Company, became surety upon said bond. * * *" This plainly does not refer to the notice of lien, which was not filed until more than a year after the execution of the bond.

Many interesting and complicated questions have arisen involving the nature of the government's lien for taxes and the extent to which a surety may be subrogated to the benefit of such lien, but they do not seem to require discussion here. It seems to me that the provisions of the statute hereinbefore cited carry a denial of the defendant's claim.

Let us assume, as defendant asserts, that at the time the bond was executed the United States had a lien upon the property of the taxpayer and that this lien was later released. Was not this release what the surety company had a right to expect at the time it executed the bond? The defendant must be deemed to have executed the bond with the full knowledge of the provisions of the statute, and the statute provides that the lien may be released upon the giving and acceptance of a bond conditioned upon payment of the taxes assessed. The giving of the bond itself was the very condition upon which the collector was authorized to release the lien, and the surety company knew that, under the statute, the giving of the bond might effect a release of the lien. The defendant contends, as I understand it, that the bond which it executed was not such bond as is effective in securing release of the lien, as is provided in 26 USCA § 115; but, on the contrary, was a bond given solely to procure an extension of time as provided in section 2272 (j), 26 USCA.

In section 115, subsec. (e), it is provided that the Commissioner of Internal Revenue

may provide for the acceptance of a single bond complying both with the requirements of section 2272 (j) and the requirements of subsection (c) of section 115. In other words, a single bond effective both to extend the time of payment and to procure release of the lien. I am not familiar with the forms adopted by the Bureau of Internal Revenue, but the bond here exhibited seems to me to be such as would be effective for both purposes. It is true that it recites that an extension of time is being granted under the provisions of section 2272 (j), and makes no explicit reference to section 115, but the condition of the bond is to pay the tax plus penalty and interest. Section 115 does not describe the contents or recitals necessary in a bond effective to secure release of the lien; it says merely that the collector may release it on the giving of a bond "that is conditioned upon the payment of the amount assessed." The bond here contains just this very condition, and was such a bond as authorized the release of the lien. The defendant is affected with knowledge of the provisions of the statute, and must have known that such a bond as it executed might cause a release of the lien. That the collector considered the bond sufficient and as given for the purpose of releasing the lien is shown by the fact that the release states that it is made because of the giving of the bond.

If we were to consider that the bond executed by defendant was effective only to secure an extension of time and not to effect a release of the lien, then the cause of defendant is not advanced. For in such case the collector's act in releasing the lien was without authority of law; he not having received a bond for that purpose. The government is not bound by the unauthorized acts of its agent, and, in such case, the release would be ineffective. The contention of the defendant that such argument fails because of the statutory provision that "a certificate of release * * * issued under this section shall be held conclusive that the lien * * * is extinguished" is, I think, untenable. A release issued under section 115 must be based on the provisions of the law, and, if based upon the giving of a bond, it must be upon a bond having the purpose named by the statute. If the collector, in total disregard of the provisions of the statute, were arbitrarily to release a tax lien without even a purported compliance with any of the conditions imposed by the statute, I do not think the government would be concluded by his act. I do not think the defense made is well taken, and judgment must go against the defendant.